# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIM NO. 3:15CR34(JAM) |
| | : | |
| v. | : | |
| GEORGE BRATSENIS | : | FEBRUARY 25, 2016 |

## MOTION FOR ORDER OF DISCOVERY

The Defendant, GEORGE BRATSENIS, hereby moves for an order of the Government to provide disclosure as directed in the attached memorandum of law.

```
                              THE DEFENDANT
                              GEORGE BRATSENIS


                    By    /s/Charles L. Kurmay_____
                              Charles L. Kurmay, Esq.
                              Federal Bar No. ct20180
                              Law Office of Charles L. Kurmay
                              3000 Main Street
                              Stratford, CT 06614
                              Telephone: (203) 380-1743
                              Facsimile: (203) 380-0293
                              Email: ckurmay@snet.net
```

## MEMORANDUM OF LAW IN SUPPORT OF
## MOTION FOR ORDER OF DISCOVERY

The Defendant in the above-entitled action hereby moves this Court to order the Government to disclose information obtained through the confidential informants and cooperating witnesses in this matter.

## FACTS

In a superseding indictment dated December 17, 2015, the Defendant, GEORGE BRATSENIS, is charged with Conspiracy to Commit Bank Robbery in violation of 18 U.S.C. § 371. Mr. Bratsenis is also charged with (2) substantive counts of Armed Bank Robbery in Counts Three and Five, in connection with his involvement in the robbery of People's Bank and First Niagra Bank, respectively, on September 26, 2014 and December 13, 2014.

The Government further alleges that the conspiracy began sometime in 2013, and its genesis began while Mr. Bratsenis and Bomani Africa were both incarcerated in prison. It is defense counsel's understanding that this relationship is the basis for Count Five of the superseding indictment.

## ARGUMENT

I. REQUEST FOR EARLY DISCLOSURE OF RULE 16(a) AND JENCKS ACT MATERIAL

Pursuant to Rule 16(a) of the Federal Rules of Criminal Procedure, the Jencks Act (18 U.S.C. §3500) and paragraphs (3), (4), (5) and (6) of this Court's Standing Order on Discovery, respectfully moves this Honorable Court for an Order directing the U.S. Government to produce all Jencks Act materials, including grand jury testimony of all potential government witnesses, and all written materials concerning all prosecution witnesses, as well as any and all reports,

memoranda, notes and interview summations concerning such actual/potential government witnesses not less than forty-five (45) days prior to jury selection herein.

Fed. R. Crim. P. 16(a) provides for discovery and inspection of the defendant's prior statements, the defendant's prior record, of documents and tangible objects, of reports of examinations and tests, and for disclosure of expert witness information. *Id.* 18 U.S.C. §3500 ("The Jencks Act") provides for the disclosure to defense of the grand jury testimony of a witness, but only after such witness has testified at a trial or hearing. However, under Fed. R. Crim. P. 16(d), the District Court may modify any protective or discovery order previously issued upon the making of a "sufficient showing" by a movant seeking discovery.

"Pretrial discovery should be approached with a spirit of cooperation among court and counsel in order to prevent those burdensome trial recesses and also, we should emphasize, to protect the government against post-conviction claims of prejudicial surprise, see *United States v. Baum*, 482 F.2d 1325, 1331-1332 (2d Cir. 1973), or claims of suppression of material and favorable evidence, see *Brady v. Maryland*, *supra*." *U.S. v. Percevault*, 490 F.2d 126, 132 (2d. Cir 1974). "A conspiracy case carries with it the inevitable risk of wrongful attribution of responsibility to one or more of the multiple defendants.... In our adversary system for determining guilt or innocence, it is rarely justifiable for the prosecution to have exclusive access to a storehouse of relevant facts." *U.S. v. Gallo*, 654 F.Supp. 463, 466 (E.D.N.Y 1987) (internal citations omitted).

Broad discovery in criminal cases should be encouraged whenever possible, particularly where fairness and efficiency are concerned, *id.* at 480, not only for adjudicative efficiency, but also protects defendants from elements of surprise that can have an inordinately prejudicial effect

3

on the outcome of a case. *Id.* at 466.  It is of paramount concern for the court to ensure that production of evidence is facilitated so as not to infringe the Defendant's right of compulsory process. *Id.* (internal citations omitted).

Judging by the landscape of the Government's case and informal disclosures it has made, it is surmised that Bomani Africa is the Government's primary cooperating witness.  Upon information and believe, defense counsel anticipates that the Government will be relying upon testimony from Africa, other undisclosed co-conspirators, prison records, and/or potentially statements from other inmates from the New Jersey State Prison.  Without complete and timely disclosure from the Government, the defense is left guessing and thus Mr. Bratsenis cannot adequately prepare a defense for trial.  If, for example, the Government seeks to prove that the conspiracy was born in a New Jersey prison while Africa and the Defendant were incarcerated together through the use of fact-laden business records or witnesses, then Mr. Bratsenis would indeed need to carry out further investigation and potentially call rebuttal witnesses.

Although the alleged conspiracy covers at least a two-year period, the evidence disclosed to date sheds no light on Mr. Bratsenis's alleged involvement prior to the days leading up to the robbery of People's Bank on September 26, 2014.  In particular, the Government has alluded to a third bank robbery in (See Gov. Trial Memo, p. 2, ¶ 2) allegedly occurring in April of 2014. The Government has not, however charged Mr. Bratsenis, or co-conspirators with this crime. Mr. Bratsenis requests to know the nature of extent of the evidence the Government possesses and the extent to which it relies of *Jencks* material as it relates to this case.

The Defendant submits that reasons striking at the heart of judicial economy and fundamental fairness constitute a "sufficient showing" as to why early disclosure of grand jury

4

testimony must be made. Fed. R. Crim. P. 16(d)(1). The Government has not provided the Defendant with any discovery whatsoever for an overwhelming majority of the alleged conspiracy and has indicated that it will not do so until two weeks prior to trial. For these reasons, Defendant respectfully submits that all Rule 16(a) and Jencks Act disclosure must be had no less than forty-five (45) days prior to trial.

II. REQUEST FOR DISCLOSURE OF BRADY MATERIAL

The Defendant, GEORGE BRATSENIS, respectfully moves this Honorable Court for an Order directing the U.S. Government to produce all materials, of any kind whatsoever, which is favorable to the defendant or which is exculpatory, as well as all materials which can be used to impeach or discredit government witnesses on the issue of guilt or punishment. This motion is made pursuant to the holding of the Supreme Court in *Brady v. Maryland*, 373 U.S. 83 (1963), *United States v. Agurs*, 427 U.S. 97 (1976), and paragraph (11) of this Court's Standing Order on Discovery.

Paragraph (11) of this Court's Standing Order on Discovery mandates that the Government disclose all information known to the government which may be favorable to the defendant on the issues of guilt or punishment within the scope of *Brady*. In *Brady*, the Supreme Court held that suppression of evidence favorable to the defense by the prosecution is a denial of substantive and procedural due process where such suppressed evidence is material either to guilt or punishment, irrespective of the good or bad faith of the prosecution. 373 U.S. 83, 86-88.

In *Agurs*, the Supreme Court held that a prosecutor violates the constitutional duty of disclosure where the omission is sufficiently significant so as to deny the defendant's right to a fair trial. 427 U.S. 97, 107-109. The prosecutor's constitutional duty of disclosure is not

measured by his moral culpability or willfulness, but if suppression of evidence results in constitutional error, it is because of the character of evidence. *Id.* at 110.  The prosecutor's constitutional duty to provide exculpatory evidence to the defense is not limited to cases in which the defense makes a specific request for particular evidence either. *Id.* 114.  Limiting discovery responsive to only a specific request not only "deprives the defense of certain evidence, but also has the effect of representing to the defense that the evidence does not exist…and in reliance on this misleading representation, the defense might abandon lines of independent investigation, defenses, or trial strategies that it otherwise would have pursued." *United States v. Bagley*, 473 U.S. 667, 682 (1985). The Constitutional standard demands disclosure of "material" evidence meaning where there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. *Id.* at 682. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome. *Id.*

While the Government has acknowledged an ongoing duty to disclose all *Brady* material, in an effort to assure the fundamental fairness and constitutionality of these proceedings, Mr. Bratsenis asks this Court to issue an order to the government directing it to comply with its *Brady* obligations sufficiently in advance of trial so as to allow the defendant to adequately investigate and prepare for trial.

### III. REQUEST FOR GIGLIO MATERIAL

The Defendant, GEORGE BRATSENIS, respectfully moves this Honorable Court for an Order directing the Government to disclose all material required under the holding of the

Supreme Court in *Giglio v. United States*, 405 U.S. 150 (1972).  This request includes, but is not limited to, the following:

    A. A complete up-to-date record of all criminal convictions of all actual/potential government witnesses, especially, if applicable, Bomani Africa, Randi Feliciano, and Janet Morrell, including arrest and conviction records from the U.S. Department of Justice, Connecticut, New York and/or New Jersey State, any other state, territory, or foreign country;

    B. A complete and up-to-date statement of all arrests where information or actual/potential government witnesses were apprehended but not convicted, including the jurisdiction and the governmental authorities involved;

    C. A complete and up-to-date list of all crimes committed by actual/potential government witnesses where there was no apprehension or arrest, including the dates, times and locations of the same;

    D. A complete list of all "bad acts" allegedly committed by the actual/potential government witnesses, their families or friends, involving the following subject matter(s), or in exchange for which the actual/potential government witnesses, their families or friends received the following: money or other valuable items; drugs or controlled substances; immunity from prosecution; favorable dispositions of criminal or civil cases or investigations; promises of protection; a new identity; a promise not to seize property, or to return any property seized; an agreement not to proceed with the forfeiture of seized property; promises of incarceration at a particular prison facility or system; an agreement to not reveal matters concerning an actual/potential government witness to any particular

person(s); and/or a promise of help or favorable recommendation to probation or parole authorities;

E. A listing of the specific services the informants or actual/potential government witnesses agreed to provide to the government;

F. A listing of any and all intervention by law enforcement agents, prosecutors, or any other governmental agent on behalf of an actual/potential government witness in this case;

G. Disclosure of all files, confidential or otherwise, relating to any actual/potential government witness regarding the IRS, FBI, DEA, ATF, the Postal Inspection Service, or any other federal, state or local police agency or organized task force;

H. Any and all evidence of perjury or false, incomplete or inconsistent statements made by any actual/potential government witness in this case;

I. Any and all evidence of the substance abuse, mental illness or emotional disturbance of any actual/potential government witness(es), and all treatment for the same received by such witness(es);

J. A complete description of the negotiations between any informant, actual/potential government witness, or the families and/or friends of the same, in connection with this case.

This material is requested pursuant to the holding of the Supreme Court in *Giglio v. United States*, 405 U.S. 150 (1972), *United States v. Bagley*, 473 U.S. 667 (1985), and *Napue v. Illinois*, 360 U.S. 264 (1959), as well as paragraph (10) of this Court's Standing Order on Discovery.

In *Giglio*, the Supreme Court held that a prosecutor's failure to disclose a promise of leniency made to a co-conspirator of the defendant in exchange for his testimony against the defendant warranted reversal of the defendant's conviction and the granting of a new trial.

In so ruling, the Court cited *Napue*, *supra*, as well as *Brady v. Maryland*, 373 U.S. at 87, when stating that "suppression of material evidence justifies a new trial "irrespective of the good faith or bad faith of the Prosecution [cites omitted] … When the reliability of a given witness may well be determinative of guilt or innocence, nondisclosure of evidence affecting credibility falls within this general rule." *Id*. Under paragraph (10) of this Court's Standing Order on Discovery, disclosure of all *Giglio* and *Napue* material is mandatory well in advance of trial.

Specifically, to the extent that the Government has offered or provided any quid pro quo in exchange for further any cooperating witness's testimony, especially but not limited to, Bomani Africa, Randi Feliciano, and Janet Morrell, Mr. Bratsenis requests timely disclosure of the exact nature of such discussions or any agreements therefrom under *Giglio* and its progeny. Moreover, the Government has alleged that Bratsenis was involved in a Darien Bank robbery on April 30, 2014; however, at this point in time the Government has not charged the defendant formally. It is unclear whether the Government intends to use any information it possesses related to this third alleged bank robbery, and if so, its relevance, the informational source, or any other information or evidence of this Darien incident or any other banks obtained through police or federal investigative efforts. Mr. Bratsenis is entitled to disclosure of this information to the extent it qualifies as *Giglio* material.

IV. <u>MR. BRATSENIS' REQUEST FOR ADDITIONAL DISCOVERY RELATED TO STATEMENTS FROM COOPERATING WITNESS OUTWEIGHS THE GOVERNMENT'S NEED TO PROTECT WITNESS IDENTITIES UNDER ROVIARO.</u>

The Government's privilege to withhold disclosure of information on confidential sources stems from the need to protect the public interest in effective law enforcement. *Roviaro v. United States*, 353 U.S. 53, 59 (1957). "The privilege recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law enforcement officials and, by preserving their anonymity, encourages them to perform that obligation." 353 U.S. 53 at 59. Here, there is less need to protect confidentiality of witnesses because the Government is presumably relying on co-conspirators to testify. Moreover, the Government has, if not expressly, implicitly communicated that one of their key witnesses will be Bomani Africa. (See Gov. Trial Memo, p. 2, ¶1) ("will prove at trial that, either during their time in prison or soon after both were released, Bratsenis and Africa planned to rob banks together.")

In *Roviaro*, the United States Supreme Court held that where disclosure of informer's identity, or of contents of his communication, is relevant and helpful to defense of accused, or is essential to a fair determination of a cause, the Defendant's right to this information trumps. *Roviaro*, 353 U.S. at 60-61. The court must balance the public interest in protecting the flow of information against the individual's right to prepare his defense by considering the totality of circumstances, including but not limited to the crime(s) charged, any defenses, and significance of the informant's testimony. *Id.* at 62. The *Roviaro* court found reversible error because the informant was present when the defendant committed the alleged crime and was a material witness to the government's case. *Id.* at 55-65.

In the Second Circuit, disclosure is required "where the informant is a key witness or participant in the crime charged, someone whose testimony would be significant in determining guilt or innocence." See *United States v. Jiminez*, 824 F. Suff. 351, 364–66 (S.D.N.Y.1993); see

also *United States v. Santiago*, 174 F. Supp. 2d 16, 40 (S.D.N.Y. 2001); see also *United States v. Sylvester*, No. 05 CR. 849 (LMM), 2006 WL 74233, at *1 (S.D.N.Y. Jan. 11, 2006); see also *United States v. Imbrieco*, No. 02 CR 47(S-3) ILG, 2003 WL 1193530, at *3 (E.D.N.Y. Jan. 10, 2003); see also *United States v. Saa*, 859 F.2d 1067, 1073 (2d Cir.), *cert. denied*, 489 U.S. 1; see also *United States v. Russotti*, 746 F.2d 945, 950 (2d Cir. 1984). In this case, the defense anticipates that the Government's case, especially as to Counts Two and Five, almost entirely relies on individuals whom the Government also accuses as participants in the crimes alleged. Alternatively, the Government could be relying on a jailhouse informant; however, without this information, the Government unnecessarily infringes on Mr. Bratsenis' Constitutional rights of confrontation, to prepare a defense, and compulsory process.

As the Supreme Court noted in *Roviaro*, whether or not to interview or call an informant as witness is the Defendant's choice, not the Government's. 353 U.S. 53 at 64. There is no reason here for the Government to withhold information the Defendant seeks and the Government is obligated to provide the information because the individual participated in and was a material witness to the events charged in the Fourth Superseding Indictment. *Roviaro*, 353 U.S. at 65 n.15. Although the Defendant need not also establish that the information he seeks would be "relevant and helpful" in the exculpatory sense to the defense, to say that the testimony of the cooperating witness "would be significant in determining guilt or innocence" is an understatement. The Government has comparatively little evidence to show that Mr. Bratsenis aided and abetted or conspired to rob First Niagra Bank as he was incarcerated at the time. Without an express admission, cooperating witness statements would be crucial to establishing any nexus to any post-arrest criminal activity. Moreover, the clear conflict of interest added by

the alleged co-conspirators' relationship as father and son, adds to Mr. Bratsenis' crucial need for this information.

Mr. Bratsenis' request is essential to a fair trial, effective presentation of the defense and adequate assistance of counsel. The United States Supreme Court has recognized the inherent unreliability and quality of testimony confidential informants provide. See *Howard v. Walker*, 406 F.3d 114, 124 (2d Cir. 2005) (confession of an accomplice is presumptively unreliable); *Arena v. Kaplan*, 952 F. Supp. 2d 468, 484 (E.D.N.Y. 2013) (confessions of accomplices are "presumptively unreliable."); *Lee v. Illinois*, 476 U.S. 530, 539-47 (1986) (co-defendant's confession presumptively unreliable); *Bruton v. United States*, 391 U.S. 123, 136 (1968) (accomplice testimony intrinsically much less reliable). The testimony of the cooperating witness is expected to form the centerpiece of the Government's case against Mr. Bratsenis. In order to properly prepare for trial and to effectively cross-examine these witnesses, the Defendant must have all information relating to their credibility, their biases, their relationship with the Government and any promises that have been made to them. In sum, the information requested here should be disclosed because the Government's key witnesses are themselves alleged participants.

V. AUTHORITIES IN SUPPORT OF FURTHER SPECIFIC REQUESTS

A. **Criminal Conduct**

Criminal convictions of the confidential sources which reflect on the veracity of such witnesses must be disclosed by the Government under Fed. R. Crim. P. 16(a)(1)(C), Standing Order paragraphs (A)(5), (A)(9) and (A)(11), Fed. R. Evid. 609(a)(2), *Brady v. Maryland*, <u>supra</u>, and *United States v. Bagley*, <u>supra</u>. Pending criminal charges, as well as the probation, parole

and supervised released status of confidential sources obviously raise questions of possible biases, prejudices and ulterior motives. They must therefore be disclosed under *Davis v. Alaska*, 415 U.S. 308 (1974); *Brady* and *Bagley*, *supra*. In this case, Bomani Africa was indicted separately from Mr. Bratsenis and Mr. Feliciano raising questions of the circumstances surrounding the Government's decision to do so and any other favorable treatment known or unknown. Records and information revealing the prior bad acts of the confidential sources must also be disclosed, particularly if the Government, pursuant to a formal or informal agreement, elected not to fully prosecute, or if such prior bad acts are probative of truthfulness or untruthfulness. *Napue*, *supra*; see also *Haber v. Wainwright*, 756 F.2d 1520, 1523 (11th Cir. 1985) (immunity for prior criminal acts of witness in exchange for testimony must be disclosed); *United States v. Mesarosh*, 352 U.S. 1 (1956) (holding discoverable and highly relevant information concerning prior or contemporaneous perjury or bizarre testimony of an informant); Fed. R. Evid. 608(b); Weinstein's Evidence 608[5] at 608-25 (1976). In particular, the defense believes that Bomani Africa undoubtedly has at least one robbery conviction; the full extent of his criminal record, especially with regards to robbery or any other crimes of moral turpitude or otherwise put into question his truthfulness.

### B. Agreements And Relationships With The Government

Information concerning promises of immunity, leniency, preferential treatment, and plea/cooperation agreements of any kind between the Government and the confidential sources (and/or their families) must be disclosed under Fed. R. Crim. P. 16(a)(1)(C), Standing Order §§(A)(5) and (10), Giglio, *supra*, and Napue, *supra*. *See also Guam v. De LaRosa*, 644 F.2d 1257, 1259 (9th Cir. 1980) (cooperation and testimony secured by promise not to prosecute

13

discoverable); *United States v. Haller*, 837 F.2d 84, 86 (2d Cir. 1988) ("there is a right of access to plea hearings and to plea agreements"); *Washington Post v. Robinson*, 935 F.2d 282, 288 (D.C. Cir. 1990); *Oregonian Publishing Co. v. U.S. District Court*, 920 F.2d 1462, 1465-66 (9th Cir. 1990); *United States v. Danovaro*, 877 F.2d 583, 589 (7th Cir. 1989). Disclosure of such is necessary for the defendant to establish the bias, interest and motive of such individuals. The right, of course, to question such individuals about charges that have been dropped, preferential treatment afforded to them or their families, and cooperation agreements that have been entered into, is constitutionally guaranteed. *See Davis v. Alaska*, 415 U.S. 308 at 316-17 ("the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination"); *see also United States v. Nickerson*, 669 F.2d 1016 (5th Cir. 1982); *United States v. Partin*, 493 F.2d 750, 757-59 (5th Cir. 1974) (threats/benefits evaluation is not limited just to the informant).

### C. Threats By The Government

The target status of a witness, and/or threats that he or she is being investigated and/or about to be prosecuted, either for crimes or breaches of law relating to the present indictment or separate matters, must be disclosed. *See United States v. Brady*, 760 F.2d 425, 428-29 (2d Cir. 1985) ("information that [witness] had been told that he was under investigation was disclosable pursuant to *Brady*…[because] it provided a motive to testify favorably to the Government"). See *Davis v. Alaska*, *supra*; see also *United States v. Sutton*, 542 F.2d 1239 (4th Cir. 1976). In particular, the Defendant seeks disclosure of any such threats made to the extent they exist, whether or not under lawful authority, to any individuals with whom Mr. Bratsenis personally associated.

D.  **Financial Arrangements With The Government**

The full record of the monies paid to confidential sources and their families as a result of their cooperation in this case, and in any other cases where such individuals have provided services, must be disclosed by the Government under Fed. R. Crim. P. 16(a)(1)(C), Standing Order §§(n)(5) and (10), *Giglio*, *Napue*, and *Bagley*, 473 U.S. at 676 (Government improperly failed to disclose contracts with informants providing for payment of money in exchange for information). This information is needed in order to flesh out the interest, bias and motive of such individuals.

Similarly, unconsummated promises of financial or other rewards or benefits are discoverable. Where the informant harbors an expectation of future financial award for his services in obtaining a conviction, such evidence is vital to the defense. *See Williamson v. United States*, 311 F.2d 441 (5th Cir. 1962) (conviction reversed where informant/witness's recovery of award was contingent on defendant's conviction). That the full details of any Government inducements offered to a witness, including his entire history of compensation, are discoverable and admissible at trial was reiterated by the Eleventh Circuit in *United States v. Williams*, 954 F.2d 668, 671 (11th Cir. 1992). There, the Court held that the "jury has a right to know what may be motivating a witness" even if "the amount [of money] paid an informant is felt by the government to be too prejudicial." 954 F2d at 672.  Consequently, the Government must disclose any promise, formal or informal, that would cause a confidential source in this case to expect an award.

E.  **Bias, Prejudice, or Motive.**

15

Defendant has a right to a full and fair cross-examination. He also has an unabridged right at trial to establish, through cross-examination, the biases, prejudices, interests or ulterior motives of any Government witness, including informants, confidential sources, etc.  See *Davis v. Alaska*, 415 U.S. 308 (1974). Without such impeachment material provided by the Government, the Defendant cannot conduct an effective cross-examination.

F. **Contradictory/Inconsistent Statements**

If confidential sources have made contradictory or inconsistent statements concerning this case, any related matter or the Defendant, such statements must be disclosed under Fed. R. Crim. P. 16(a)(1)(C), Standing Order §§(A)(5) and (11), *Brady* and *Bagley*, supra.

G. **Impeachment**

Information relating to the credibility of the confidential sources is material to the defense and must be disclosed under Fed. R. Crim. P. 16(a)(1)(C) and Standing Order §§(A)(5)(9) and (11). Particularly relevant credibility information includes that such an individual is undergoing psychiatric treatment (*United States v. Lindstrom*, 698 F.2d 1154, 1159 (11th Cir. 1983), is physically/emotionally impaired (*United States v. Partin*, 493 F.2d 750, 762 (5th Cir. 1974), is addicted to/abuses drugs/alcohol (*United States v. Bernard*, 625 F.2d 854, 858-59 (9th Cir. 1980); *United States v. Collins*, 472 F.2d 1017 (5th Cir. 1972); *United States v. Fowler*, 465 F.2d 664 (D.C. Cir. 1972), personally dislikes the defendant, *Guam v. De LaRosa*, 644 F.2d 1257, (9th Cir. 1980); *United States v. Haggett*, 438 F.2d 396 (2d Cir.), *cert. denied*, 91 S.Ct. 1638 (1971), or has taken a polygraph examination.  See *United States v. Hart*, 344 F.Supp. 522 (E.D.N.Y.).

**WHEREFORE**, for the foregoing reasons, the Defendant GEORGE BRATSENIS respectfully requests that his motion be granted.

                THE DEFENDANT, GEORGE BRATSENIS

By ___/s/Charles L. Kurmay_____
     Charles L. Kurmay, Esq.
     Federal Bar No. ct20180
     Law Office of Charles L. Kurmay
     3000 Main Street
     Stratford, CT 06614
     Telephone: (203) 380-1743
     Facsimile: (203) 380-0293
     Email: ckurmay@snet.net

**CERTIFICATION**

I hereby certify that on February 25, 2016, a copy of foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

     ___/s/Charles L. Kurmay_____
     Charles L. Kurmay, Esq.