UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIM NO. 3:15CR34(JAM) |
| v. | : | |
| GEORGE BRATSENIS | : | FEBRUARY 25, 2016 |

## DEFENDANT'S MOTION TO DISMISS OR SEVER

Pursuant to Fed. R. Crim. P. 12(b)(3)(A) and 2(b)(3)(D), Fed. R. Crim. P. 8, Fed. R. Crim. P. 14 and the Fourteenth, Fifth and Sixth Amendments to the United States Constitution and for the reasons stated in the supporting Memorandum of Law, the Defendant, George Bratsenis, hereby moves the Court to:

1. Dismiss, or in the alternative, sever, COUNT FIVE of Indictment (Armed Robbery of First Niagra Bank);
2. Sever the Objects of the Conspiracy in COUNT TWO of the Indictment so that there are two separate conspiracy charges;
3. Sever COUNT ONE (Unlawful Possession by a Felon) of the Indictment;
4. Sever the Defendant, George Bratsenis, so that he may be indicted and tried separately from co-defendant, Randi Feliciano.

Mr. Bratsenis would suffer significant prejudice compromising the jury's ability to make a reliable judgment about guilt or innocence if the Government is permitted to join both of the alleged bank robberies under a single conspiracy, include an unrelated count of unlawful possession by a felon under this indictment, and try the co-defendants in the same trial despite mutually antagonistic defenses.

RESPECTFULLY SUBMITTED,

GEORGE BRATSENIS

By __/s/   Charles L. Kurmay_____
   CHARLES L. KURMAY, ESQ.
   3000 MAIN STREET
   STRATFORD, CT 06614
   FEDERAL BAR NO. CT 20180
   (203) 380-1743 (phone)
   ckurmay@snet.net (email)

# MEMORADUM OF LAW IN SUPPORT OF
# DEFENDANT'S MOTION TO DISMISS OR SEVER

## FACTS

1. In COUNT ONE, the Government alleges that on or about September 29, 2014, in the District of Connecticut, GEORGE BRATSENIS, having been convicted on December 6, 1984, in the United States District Court for the District of Connecticut of Conspiracy to Commit Bank Robbery, knowingly possessed ammunition affecting commerce, specifically, nine Aguila .32 caliber fill metal jackets; seven Winchester 20 gauge shotgun shells; and seven ELEY .22 caliber bullets in violation of Title 18, United States Code, Sections 922(g)(I) and 924(a)(2).

The ammunition was found and seized pursuant to a valid search warrant of the premises, located at 13 Spinning Wheel Road, in Monroe, Connecticut at which George Bratsenis resided prior to be being arrested. The Government does not allege that this ammunition was used in furtherance of the alleged bank robberies.

2. In COUNT TWO of the Indictment, the Government alleges that beginning sometime in 2013 through December 2014, in the District of Connecticut and elsewhere, defendants GEORGE BRATSENIS and RANDI FELICIANO, together with Bomani Africa, who was charged in a separate Information, and others known and unknown to the Grand Jury, knowingly and willfully conspired together to commit bank robbery. The first bank robbery ("Peoples Bank") was alleged to occur on September 26, 2014. The second bank robbery ("First Niagra Bank") was alleged to occur on December 13, 2014. The Defendant, George Bratsenis, was arrested on September 29, 2014, almost three months before the second bank robbery was alleged to occur and remained incarcerated

since that time. Thus, Mr. Bratsenis was incarcerated at the time the First Niagra Bank robbery was carried out on December 15, 2014.

3. COUNT FIVE of the Indictment alleges that on or about December 13, 2014, in the District of Connecticut, defendant Randi Feliciano, along with Bomani Africa, who is charged in a separate Information, was either principally involved or aided and abetted in robbing First Niagara Bank located at 225 Hawley Lane, in Stratford, Connecticut in violation of Title 18, United States Code, Sections 2ll3(a), 2113(d). Bratsenis is not explicitly mentioned in Count Five of the Indictment. Therefore, presumably, the Government is alleging that Mr. Bratsenis is criminally liable as a co-conspirator.

**ARGUMENT**

Rule 14(a), Fed. R. Crim. P., grants courts wide discretion to "order separate trials of counts, sever the defendants' trials, or provide *any other relief* that justice requires where consolidation 'appears to prejudice a defendant.' " *United States v. Pena*, 932 F. Supp. 2d 464, 465 (S.D.N.Y. 2013). In order to prevail in a motion to sever distinct offenses for separate trials, the defendant must show substantial prejudice from the joinder that would compromise a specific trial right or a jury's ability to make a reliable judgment about guilt or innocence. *United States v. Sampson*, 385 F.3d 183 (2d Cir. 2004); *Zafiro v. United States*, 506 U.S. 534, 539 (1993).

Prejudice from the joinder of counts may result in a number of ways: (1) the defendant and co-defendant's may have mutually antagonistic defenses; (2) impermissible criminal *propensity* as to the defendant; *or* (3) the jury may *cumulate the evidence* of the various crimes charged. *Drew v. United States*, 331 F.2d 85 (D.C. Cir. 1964).

Other factors relevant here that the court should consider in determining whether prejudice from a joint trial rises to the level of a miscarriage of justice are the (4) number of defendants and counts, (5) complexity of indictment…(6) disparities in amounts or type of proof offered against defendants, (7) disparities and *degrees of involvement* in the overall scheme, (8) any *possible conflicts of interests*, and prejudice from evidence admitted against codefendants. *United States v. Guillen-Rivas*, 950 F. Supp. 2d 446, 457 (E.D.N.Y. 2013); see also *United States v. Gallo*, 668 F. Supp. 736 (E.D.N.Y. 1987).

None of the factors are alone dispositive; instead, the court must decide whether the jury could reasonably consider the evidence as to each defendant separately, independent of the evidence against his or her coconspirators. *Id.* at 49.

I. <u>THE COURT SHOULD DISMISS, OR IN THE ALTERNATIVE SEVER COUNT FIVE OF THE INDICMENT.</u>

Count Five of the Indictment alleges that on or about December 13, 2014, Randi Feliciano and Bomani Africa, who was charged in a separate information, was either principally involved or aided and abetted in robbing First Niagra Bank.  Mr. Bratsenis is not explicitly mentioned in this count of the Indictment.  As such, Court Five of the Indictment against Mr. Bratsenis should be dismissed without further facts alleging vicarious liability.

In the alternative, Count Five of the Indictment should be severed from the other Counts as the Government has not sufficiently pled facts required under Rule 8, Fed. R. Crim. P., to show that the Defendant was part of a common plan or scheme to commit multiple bank robberies.  Further, the disparity in the evidence pertaining to Mr.

5

Bratsenis' co-defendants versus the evidence pertaining to Mr. Bratsenis is extremely prejudicial and will impact Mr. Bratsenis' ability to obtain a fair trial in this matter.

Joinder of temporally distinct charges raises the potential for jury confusion or improper propensity inferences. See *United States v. Ramos*, No. 06 CR. 172 (LTS), 2009 WL 1619912, at *2 (S.D.N.Y. June 5, 2009). In this case, that the two alleged robberies were committed three (3) months apart while Bratsenis was in jail would confuse a jury and create substantial evidence, in almost in its entirely would not be relevant to Bratsenis' determination of guilt.

The only relevant issue in determining Bratsenis' guilt with regards to the First Niagra bank robbery is whether or not these crimes were a reasonably foreseeable result of an existing conspiracy to rob banks. This issue can only fairly be resolved in conjunction with the alleged conspiracy charge in a separate trial. As Bratsenis was incarcerated at the time the robbery was carried out, most of the evidence pertaining to this robbery presumably will pertain to Feliciano and Africa as the principal perpetrators of this crime. This evidence will offer little probative value into the determination of Mr. Bratsenis' involvement and instead, would needlessly cumulate irrelevant evidence against Mr. Bratsenis, inflaming a jury that would be more likely to convict based on his alleged criminal association to Africa and Feliciano.

In *United States v. Gallo*, the defendants were entitled to severance in view of the complexities of the case, the number of determinations of guilt or innocence that a jury would have to make, the convenience and efficiency resulting from separate trials, and the amount of evidence that would be admissible against some but not all defendants. *United States v. Gallo*, 668 F. Supp. 736 (E.D.N.Y. 1987).

Similar concerns are at play here with the possibility of multiple convictions, with separate and distinct incidents, with varying degrees of involvement, permitting joinder of this crime would prejudice Bratsenis as he is undoubtedly, if at all, less culpable and the Government does not explicitly allege nor is it possible for him to be directly involved. There is no way that a jury would be able to compartmentalize the vast disparity in the evidence between Mr. Bratsenis and alleged co-conspirators, and as such would directly affect Mr. Bratsenis' rights

Prejudice is more likely to occur when the accused wishes to testify on one but not the other of two joined offenses that are distinct in time, place, and evidence. *United States v. Sampson*, 385 F.3d 183, 191 (2d Cir. 2004); citing *Cross v. United States*, 335 F.2d 987, 989 (D.C.Cir.1964). Jury may cumulate the evidence of the various crimes charged and find guilt when, if considered separately, it would not so find. *Drew v. United States*, 331 F.2d 85, 88 (D.C. Cir. 1964); see also *United States v. Gilbert*, 504 F.Supp. 565, 571 (S.D.N.Y.1980) (granting severance for disproportionate involvement causing prejudice from accumulating effect of evidence).

As previously noted, counsel believes that the Government's case against Mr. Bratsenis in his involvement of the First Niagra bank robbery almost entirely relies upon statements of cooperating witnesses, who themselves are alleged to be participants in the crimes charged. This scenario poses a serious conflict in that again it creates tension between Mr. Bratsenis' right of confrontation and his right to compulsory process. It is possible that Mr. Bratsenis would want to testify certain counts when cooperating witness testimony is inherently suspect.

As noted in *United States v. Gallo*, a conflict in trial strategy when it comes to the defendant's Constitutional rights poses a serious threat of prejudice. This is not merely to further Mr. Bratsenis' "chances of acquittal" (*see United States v. Figueroa*, 618 F.2d 934, 944 (2d Cir. 1980), but rather to exercise fundamental Constitutional rights. A serious conflict of interest is at play here when Mr. Bratsenis' co-defendants, as father and son, have a serious motive to lie about his level of involvement. Moreover, this conflict cannot adequately be addressed in cross-examination if these counts are to remain joined because Mr. Bratsenis would nonetheless be subjected to the prejudicial effect of evidentiary spillover and cumulative evidence.

## II. THE COURT SHOULD SEVER THE OBJECTS OF THE CONSPIRACY IN COUNT TWO OF THE INDICTMENT RESULTING IN TWO SEPARATE CONSPIRACY CHARGES.

Multiple agreements to commit separate crimes constitute multiple conspiracies. *United States v. Broce*, 488 U.S. 563, 570-71 (1989). Where the indictment charged a single conspiracy, but the proof showed at most a series of separate conspiracies, court should have ordered a severance, or new trials, as it deemed necessary to avoid prejudice. *United States v. Goss*, 329 F.2d 180, 181 (4th Cir. 1964); *see also United States v. Butler*, 494 F.2d 1246 (10th Cir. 1974) (variance between an indictment alleging one general conspiracy and evidence showing more conspiracies was harmful error).

Upon information and belief, the basis for the Government's allegations of Mr. Bratsenis' involvement in the First Niagra robbery is founded primarily by relying on statements from Africa or Feliciano. The Government alleges that Mr. Bratsenis expressed his frustration that Africa was not committing more bank robberies and that he was not providing money to Janet Morrell, during a phone conversation on while

Bratsenis was in prison. (*See* Gov. Trial Memo, p. 12). The Government also believes that Mr. Bratsenis indirectly contacted Africa through his girlfriend, Janet Morrell in an effort to keep the conspiracy alive, as evidenced in a series of phone conversations in 2015 on January 10, March 16, and March 19. (*See* Gov. Trial Memo, p. 16-18). Of most importance is a telephone call made by Mr. Bratsenis approximately one month after the First Niagra Bank Robbery. The Government translates Mr. Bratsenis' words "[Africa] has gotta go out there and work," made during a prison call to mean he is trying to orchestrate further bank robberies. However, this call implies that Mr. Bratsenis had no knowledge that any subsequent robberies were carried out since his arrest in September 2014. Mr. Bratsenis' ignorance of the First Niagra Bank robbery tends to show that, even if all three accused were involved in the People's Bank robbery, a separate and distinct conspiracy to rob First Niagra existed; one that did not involve enriching Bratsenis or his agents.

Although it is true that unless a conspirator produces affirmative evidence of withdrawal beyond incarceration, his participation in a conspiracy is presumed to continue, *United States v. Leslie,* 658 F.3d 140, 143 (2d Cir. 2011), Mr. Bratsenis cannot withdraw from a conspiracy in which he never joined in the first place. The Government cannot prove one allegation with another, especially when the Government relies on biased co-conspirator statements. Mr. Bratsenis' ignorance of the First Niagra Bank robbery occurring months prior, evidenced by his conversations with Janet Morrell, tends to negate any knowledge and show a separate and distinct criminal plan independent of any involvement in the People's Bank robbery.

The Court should also sever Count Two as it is likely that the Government will rely on evidence of Mr. Bratsenis' prior bank robbery conviction in establishing the global conspiracy relationship of the parties which would foreclose any possibility of a fair trial. The Government alleges that beginning in 2013 Bratsenis and Africa discussed their plans to rob banks. (*See* Fourth Superseding Indictment, p. 2, ¶3). Upon information and belief, the defense anticipates that the Government will introduce evidence that a conspiracy was formed while both were incarcerated in a New Jersey prison. (*See* Gov. Trial Memo, p. 25). The defense also anticipates that the Government may call Africa to testify to that end.

This will be extremely prejudicial to Mr. Bratsenis in a number of ways. First, it would require the Government to introduce evidence that Mr. Bratsenis was incarcerated for bank robbery. This would unquestionably inflame the jury and constitutes impermissible propensity evidence eliminating any chance Mr. Bratsenis could receive a fair trial in this case. Evidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait. Fed. R. Evid. 404(a)(1). It would be impossible to dispel jury suspicion if evidence of this kind was presented and the risk of a jury hearing it would be too great. Even if the Government limited testimony to specifically exclude any mention of robbery as a basis for his sentence, it would portray Mr. Bratsenis as a career criminal, which alone is extremely prejudicial and inadmissible to prove a general disposition to commit crime. Allegations that a generalized plan to rob banks originated in prison, while serving time for bank robbery, is akin to forcing the defendant wear handcuffs and a jumpsuit in court.

Second, it is unclear whether or not the Government intends to produce witnesses to corroborate the content of any discussions between Mr. Africa and Mr. Bratsenis. If so, Mr. Bratsenis would have Sixth Amendment rights to investigate and compulsory process to call witnesses to refute any allegations and he would want to exercise that right. Such a scenario would fundamentally incompatible with Mr. Bratsenis' right to a fair trial as it would place undue focus on Mr. Bratsenis' time spent in prison and prior criminal history for bank robbery. Any jury would not be able to compartmentalize the spillover prejudice to which it would be subjected.

Third, evidence of a conspiracy would be cumulative and inflame a jury simply by the fact that Mr. Bratsenis is having to defend multiple charges regardless of cross-admissibility. Courts have expressed concern for multiplicity of charges and its potential for prejudice; see *Drew v. United States*, 331 F.2d 85, 88 (D.C. Cir. 1964) (although these concerns must be weighed against the court's preference for judicial economy… hostility engendered by the charging of several crimes as distinct from only one); see *Zafiro v. United States*, 506 U.S. 534, 540 (1993) (avoid multiplicity of trials only if can be achieved *without* substantial prejudice).

Further, Mr. Bratsenis may want to testify as to only the conspiracy charge to challenge Africa's or any testimony proffered to establish the impetus of a global conspiracy to rob banks. His right to testify as this count only is substantially frustrated by the fact that the Government could then introduce evidence of his prior robbery as impeachment evidence should he chose to do so. Therefore, the Government is placing a wedge between Mr. Bratsenis' Constitutional rights and forcing him to choose between them. Mr. Bratsenis will suffer prejudice unless the conspiracy charge is severed.

III. <u>THE COURT SHOULD SEVER COUNT ONE (UNLAWFUL POSSESSION OF AMMUNTION) FROM THE INDICTMENT BECAUSE IT IS COMPLETELY UNRELATED TO THE UNDERLYING CHARGES AND WOULD THUS PREJUDICE THE DEFENDANT BY ADDING UNNECESSARY CUMULATIVE AND MISLEADING EVIDENCE.</u>

The Government plans to offer evidence of Mr. Bratsenis' prior bank robbery conviction as evidence to prove that he is a felon, which is a required element to prove unlawful possession of ammunition. (*See* Gov. Trial Memo, p. 26). Allowing joinder of Count One would subject Mr. Bratsenis to incurable prejudice if there were even a chance a jury would hear evidence of Mr. Bratsenis' prior bank robbery conviction. This is especially the case when the allegations in Count One have next to nothing to do with allegations of bank robbery.

Cross-admissibility of the evidence may be relevant in determining whether the court should grant severance; a finding that the evidence is not cross-admissible militates towards in favor of severance. *United States v. Hampton*, 484 Fed. Appx. 363 (11th Cir. 2012). Absent any evidence suggesting a nexus to the robberies, any evidence related to Count One is irrelevant and highly prejudicial as cumulative, misleading, confusing, and could potentially waste the court's time when the seized ammunition was likely not used as an instrument of the bank robberies alleged. Thus, even in isolation, joinder Count One is highly prejudicial from an evidentiary standpoint.

Possession of ammunition does not tend to show that Mr. Bratsenis committed bank robbery when no evidence exists proving any nexus whatsoever between the bank robberies alleged and the ammunition found. More importantly, the Government has not alleged that the ammunition found was in any way used to further the Peoples Bank or First Niagra Bank robberies and thus may not be properly joined. *See* Rule 8(b), Fed. R.

Crim P. The only connection to the bank robberies alleged here is that the ammunition was found pursuant to a search warrant executed upon Mr. Bratsenis' arrest. Among the fruits of that search were shotgun shells along with other ammunition, some of which appear to be antique. It is unknown to counsel at this time whether the ammunition found was even capable of use or any forensic testing was conducted. For one, if the Government was allowed to be present evidence of the ammunition, it would likely confuse the jury into thinking that it was used in the bank robbery in contradiction to the evidence and to counsel's understanding of the Government's allegations.

The Government has proffered no evidence, nor stated that they intend to prove, that any of ammunition found in the bedroom where George Bratsenis was staying was used or could have been used in the robbery. If this somehow were the case, we should expect to hear testimony from an expert identifying the make and model of the gun used from the available video surveillance and proffering an opinion as to whether or not the ammunition found matches any gun brandished in the video. Therefore, evidence of the ammunition seized is completely irrelevant and prejudicial. *See* Fed. R. Evid. 401, 403.

Another relevant factor here is the relative strength of the evidence on the counts. Where the evidence on one count is stronger than evidence on other counts is weak, it can be highly prejudicial because a jury may focus on the evidence in the aggregate. *Verzi v. Superior Court*, 183 Cal. App. 3d 382, 388 (4th Dist. 1986); *see also U.S. v. Lewis*, 787 F.2d 1318 (9th Cir. 1986). Here, the jury may similarly focus on this stronger evidence of what is essentially a strict liability crime, rather than discretely analyzing the evidence on each count, thus prejudicing Mr. Bratsenis in the other counts where the evidence is not quite as strong.

*United States v. Jones* is illustrative of a potential for prejudice in facts very similar to this case. There the defendant's conviction was reversed when the court refused to sever a felony possession charge "arising out of the same operative set of facts as the first three [bank robbery] counts." The courts attempts to minimize prejudice were fruitless even though it forbade the government from eliciting underlying facts of the prior conviction; and the court also instructed the jury not to consider the prior felony conviction "for character or propensity." *Jones*, 16 F.3d 487, 489 (2d Cir. 1994).

The potential is even greater here where, unlike *Jones*, there is no evidence that the gun related to the felony possession charge was used in the alleged robbery charges joined in the same indictment. This risk will be confounded given the cast of characters expected to testify, and the court should not only consider what will certainly prejudice Mr. Bratsenis, but also what potentially could lead to prejudice.

IV. THE COURT SHOULD SEVER OUT THE DEFENDANT, BRATSENIS, SO THAT HE IS INDICTED AND TRIED SEPARATELY FROM RANDI FELICIANO.

In a multi-defendant and potentially multi-conspiracy case, Mr. Bratsenis will be extremely vulnerable to the spillover prejudice for all of the critical phases of the conspiracy to which he was not involved. Courts in this Circuit have determined that such an accumulation of evidence during the course of the trial places the uninvolved defendants at risk of spillover prejudice because the jurors may not be able to prevent themselves from attributing the evidence to the uninvolved defendants. *See, e.g., United States v. Upton*, 856 F.Supp 727, 736 (E.D.N.Y. 1994); *see also United States v. Cardascia*, 951 F.2d 474, 483 (2d Cir 1991) (recognizing that appellants may have suffered some prejudice when they were forced to sit before the jury for over a month

without any evidence being introduced concerning their activities); *United States v. Branker*, 395 F.2d 881, 888 (2d Cir 1968) (spillover prejudice a concern for defendants involved in only a small proportion of the evidence); *United States v. Gatien*, 1997 WL 661138, at *4 (E.D.N.Y,. October 20, 1997) (granting severance to minor participants in alleged RICO conspiracy). Further, it has become quite clear that Mr. Bratsenis and his co-defendant, Feliciano, will have extremely antagonistic defenses.

For all of the aforementioned reasons, in particular the vast disparity in the amount, quality, and kind of evidence that would be only attributable to the Mr. Bratsenis' co-defendants, it would be prejudicial to the point of depriving Mr. Bratsenis' Constitutional right to fair trial and notions of fairness were the co-defendants to remain joined in this case.

Wherefore, the Defendant, George Bratsenis, hereby moves the Court to dismiss, or in the alternative, sever, COUNT FIVE of Indictment (Armed Robbery of First Niagra Bank); sever the Objects of the Conspiracy in COUNT TWO of the Indictment so that there are two separate conspiracy charges; sever COUNT ONE (Unlawful Possession by a Felon) of the Indictment; and sever the Defendant, George Bratsenis, so that he may be indicted and tried separately from co-defendant, Randi Feliciano.

                RESPECTFULLY SUBMITTED,

                GEORGE BRATSENIS

        By __/s/__ Charles L. Kurmay_____
           CHARLES L. KURMAY, ESQ.
           3000 MAIN STREET
           STRATFORD, CT 06614
           FEDERAL BAR NO. CT 20180
           (203) 380-1743 (phone)
           ckurmay@snet.net (email)

## **CERTIFICATION**

       I hereby certify that on February 25, 2016 a copy of foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing. Parties may access this filing through the Court's CM/ECF system.

                                              /s/ Charles L. Kurmay_____
                                              CHARLES L. KURMAY