## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | 3:15-CR-034 (JAM) |
| | : | |
| v. | : | |
| | : | |
| GEORGE BRATSENIS | : | FEBRUARY 23, 2022 |

### DEFENDANT GEORGE BRATSENIS
### MEMORANDUM IN AID OF SENTENCING

The Defendant George Bratsenis, through counsel, respectfully files this memorandum as an aid to the Court in sentencing.

Mr. Bratsenis entered a plea of guilty to Count Three of the Fourth Superseding Indictment charging him with Armed Bank Robbery, in violation of 18 U.S.C. §§ 2113(a), 2113(d) and 2. Pursuant to that agreement, the parties' initial assessment was that Mr. Bratsenis possesses a Criminal History Category IV and a total offense level of 27, which renders a sentencing range of 100 to 125 months of imprisonment and a fine range of $25,000.00 to $250,000.00, in accordance with U.S.S.G. § 5E1.2(c)(3)[1]. Additionally, Mr. Bratsenis is subject to a term of supervised release ranging from two (2) years to five (5) years.

Mr. Bratsenis submits that there are sufficient grounds to warrant the imposition of a *non-guideline* sentence that will be "sufficient, but not greater than necessary" to satisfy the key purposes of sentencing. Moreover, Mr. Bratsenis believes that the imposition of a sentence time served and supervised release is sufficient, but not greater than necessary, to satisfy the purposes of sentencing as set forth in 18 U.S.C. § 3553(a).

---

[1] Previously, the undersigned objected to the defendant's CHC within the PSR as it had been supposed that the 1983 convictions yielded one as opposed to two criminal history points, which would have yielded a CHC III as opposed to CHC IV. The undersigned has since clarified that these were two distinct events, and on that basis withdraws that objection. The proper starting advisory guideline range therefore is appropriately 100-125 months.

The grounds for a non-guideline sentence are compelling, to wit:

A. Mr. Bratsenis' active cancer and COPD diagnoses which are more fully set forth in an addendum filed under seal;

B. His advanced age of 73 years, and *otherwise* poor health as more specifically set forth in an addendum to this memorandum filed under seal;

C. His having already served approximately seven (7) and one half years in prison since September 2014;

D. His military service in the Vietnam War, and subsequent honorable discharge; and

E. The harsh conditions within the Bureau of Prisons because of the Covid-19 Pandemic.

Part I of this memorandum discusses Mr. Bratsenis' background and circumstances; Part II discusses the post-Booker sentencing scheme; Part III presents the argument that a non-guideline sentence should be imposed in this case pursuant to 18 U.S.C. § 3553(a); Part IV proposes a departure from the applicable guidelines; and Part V concludes the memorandum by summarizing a sentencing proposal. Mr. Bratsenis' aspiration at this juncture is to live out his remaining days with family while seeking cancer treatment as best as he is able at a facility local and personal to him.

## I.      BACKGROUND AND FACTUAL CIRCUMSTANCES

Mr. Bratsenis was incarcerated and detained in Connecticut State Custody from September 30, 2014, through April 15, 2015. However, technically, his arrest for the instant offense occurred on February 19, 2015. On or around April 15, 2015, Mr. Bratsenis was transferred to Donald W. Wyatt Detention Facility, where he remained through October 21, 2016. Mr. Bratsenis was then transferred to the Metropolitan Detention Center (MDC) in

Brooklyn, NY, where he remained until December 13, 2016, when he was transferred to Queens Detention Facility until November 27, 2018. On that date, through August 15, 2019, Mr. Bratsenis was detained at the Orange County Jail.  Beginning on August 15, 2019, Mr. Bratsenis was transferred to the Metropolitan Correctional Center (MCC). He remained there until he was transferred back to MDC in or about late August 2021 subsequent to MCC's closure. The New York Times then reported that "conditions […] have deteriorated so much that federal officials said on Thursday that they planned to close the facility, at least temporarily." Benjamin Weiser, *Justice Dept. to Close Troubled Jail Where Jeffrey Epstein Died*, N.Y. Times, Aug. 26, 2021, https://www.nytimes.com/2021/08/26/nyregion/MCC-epstein-jail-closed.html. To this day, MCC remains closed, unable to address the issues which caused it to close.  According to the Washington Post USDJ Colleen McMahon the agency's ineptitude and failure to 'do anything meaningful" at the Metropolitan Correctional Center in Manhattan and the Metropolitan Detention Center in Brooklyn amounted to the "single thing in the five years that I was chief judge of this court that made me the craziest'". https://www.washingtonpost.com/national-security/jails-run-by-morons-judge-says/2021/05/07/3b8b00c4-af46-11eb-acd3-24b44a57093a_story.html  In total, by the time of sentencing Mr. Bratsenis will have been incarcerated for approximately ninety (90) months.

The undersigned counsel has received and reviewed the defendant's Presentence Report (PSR) prepared by the United States Probation Office. Mr. Bratsenis' background information as set forth in the "Offender Characteristics" ¶¶ 73-117 of the PSR fairly and accurately describe his history and shall be incorporated by reference herein.

## II.      POST-BOOKER: THE LAW TO BE CONSIDERED IN IMPOSING A "REASONABLE" SENTENCE

The decision in U.S. v. Booker, 125 S.Ct. 738 (2005) declared the Federal Sentencing

Guidelines unconstitutional to the extent they are mandatory.  Id. at 750.  Instead of being bound

by the Sentencing Guidelines, the Sentencing Reform Act, as revised by Booker, requires a

tailor-made sentence:

> [the federal sentencing statute] requires a sentencing court to consider
> Guidelines ranges, see 18 U.S.C.A. § 3553(a)(4), but it permits the court to
> tailor the sentence in light of other statutory concerns as well, see § 3553(a).

Booker, 125 S. Ct. at 757.  The overriding concern in Section 3553(a) is for sentencing courts

to impose a sentence sufficient, but not greater than necessary in appreciating the goals of

sentencing.

The directives of Booker and § 3553(a) make clear that courts may no longer

uncritically apply the guidelines.  The Supreme Court articulated in Rita v. United States,

551 U.S. 338, rehearing denied, 551 U.S. 1181 (2007) and again in Gall v. United States, 552

U.S. 38 (2007), that in sentencing, there is no presumption that the Guidelines must apply:

> The sentencing judge, as a matter of process, will normally begin by
> considering the presentence report and its interpretation of the Guidelines.  18
> U.S.C. § 3552(a); Fed. R. Crim. Proc. 32.  [She] may hear arguments by
> prosecution or defense that the Guidelines sentence should not apply, perhaps
> because (as the Guidelines themselves foresee) the case at hand falls outside
> the "heartland" to which the Commission intends individual Guidelines to
> apply, USSG § 5K2.0, perhaps because the Guidelines sentence itself fails
> properly to reflect § 3553(a) considerations, or perhaps because the case
> warrants a different sentence regardless.  See Rule 32(f).  Thus, the sentencing
> court subjects the defendant's sentence to the thorough adversarial testing
> contemplated by federal sentencing procedure.  See Rules 32(f), (h), (i)(C)
> and (i)(D); see also Burns v. United States, 501 U.S. 129, 136, 111 S.Ct. 2182,
> 115 L.Ed.2d 123 (1991) (recognizing importance of notice and meaningful
> opportunity to be heard at sentencing).  In determining the merits of these
> arguments, the sentencing court does not enjoy the benefit of a legal
> presumption that the Guidelines sentence should apply.  Booker, 543 U.S., at
> 259-260.

Rita v. United States, supra, 551 U.S. 351.

In Gall v. United States, supra, 552 U.S. 49, the Supreme Court further explained its

decisions in Booker and Rita: "[T]he Guidelines should be the starting point and the initial

benchmark.  The Guidelines are not the only consideration, however."  The Second Circuit had

previously issued similar instructions in its decision in United States v. Crosby, 397 F.3d 103,

113 (2d Cir. 2005):

> First, the Guidelines are no longer mandatory.  Second, the sentencing judge must
> consider the Guidelines and all of the other factors listed in section 3553(a).  Third,
> consideration of the Guidelines will normally require determination of the
> applicable Guidelines range, or at least identification of the arguably applicable
> ranges, and consideration of applicable policy statements.  Fourth, the sentencing
> judge should decide, after considering the Guidelines and all the other factors set
> forth in section 3553(a), whether (i) to impose the sentence that would have been
> imposed under the Guidelines, *i.e.*, a sentence within the applicable Guidelines
> range or within permissible departure authority, or (ii) to impose a non-Guidelines
> sentence.  Fifth, the sentencing judge is entitled to find all the facts appropriate for
> determining either a Guidelines sentence or a non-Guidelines sentence.

In sum, in every case, as this Court is aware, a sentencing court is to consider all the

§3553(a) factors, not just the Sentencing Guidelines, in determining a sentence that is sufficient

but not greater than necessary to meet the goals of sentencing.

### III.     PURSUANT TO 18 U.S.C. § 3553(A) DUE TO MR. BRATSENIS' AGE, ACTIVE CANCER DIAGNOSIS, AND OTHERWISE POOR HEALTH THIS COURT SHOULD SENTENCE MR. BRATSENIS TO TIME SERVED WITH SUPERVISED RELEASE.

Mr. Bratsenis has thus far served approximately eighty-two (82) months in federal

custody, and an additional four (4) months and 19 days in state custody before that. By the time

of sentencing he will have been incarcerated approximately ninety (90) months.  This period of

incarceration, especially in such a time as the COVID-19 pandemic, while suffering from cancer,

and other maladies has been particularly punishing.  His time incarcerated, his cancer diagnosis,

and his age have all caused Mr. Bratsenis to reflect on his long and difficult life, the mistakes he has made, and how he would like to live out the rest of it.  A sentence of time served, and supervised release will comply with the purposes of sentencing pursuant to §3553(a) and allow him to seek his own medical treatment in the community.

The Court may impose a non-guideline sentence if it determines that neither the guidelines nor the permissible departure authority permit the imposition of a sentence that accords with the goals and factors set forth in 18 U.S.C. §3553(a).  Booker, 543 U.S., at 259-260. 18 U.S.C. §3553(a) provides the overall framework within which a sentencing judge must determine the appropriate sentence for a defendant.  While not all of the 3553(a) factors contained in the statue will apply in every case, most do here and combined militate in favor of a time served sentence.  In this case, the factors most directly relevant that the Court should consider are:

> "(1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed—
>     (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>     (B) to afford adequate deterrence to criminal conduct;
>     (C) to protect the public from further crimes of the defendant; and
>     (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> (3) the kinds of sentences available;
> (4) the kinds of sentence and the sentencing range established for—
>     (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines…;
> (5) any pertinent policy statement--
>      (A) issued by the Sentencing Commission…;
> (6) the need to avoid unwarranted sentence disparities…

Thus, while a sentencing court must consider the applicable Guidelines sentence, there is no longer a presumption that such a sentence satisfies the objectives of §3553(a).  Significantly,

neither §3553(a) nor the majority opinion in Booker suggest that the sentencing court should give the Guidelines any greater consideration than any of the other factors contained in §3553(a).

18 U.S.C. § 3553(a) provides that the Court "shall impose a sentence sufficient, but not greater than necessary" to achieve the goals of just punishment, specific and general deterrence, and to provide needed educational, vocational, medical care or other correctional treatment in the most effective manner.  Each of these goals can be met in this case with a sentence of time served and supervised release.  Such a sentence would serve the goal of just punishment. Mr. Bratsenis has been incarcerated during a pandemic during which time the entire world, and especially detention centers, have felt the severely detrimental effects of the COVID-19 pandemic, which has made incarceration more punishing than contemplated at the time this Court ordered Mr. Bratsenis' confinement[2].  If Mr. Bratsenis is released, he has plans to undergo treatment for his cancer in the community where he will have far greater access to it.  His failing health has dominated the last many years and is expected to continue to do so well into the future.  In fact, Mr. Bratsenis saw an oncologist in late October 2021, and despite asking to be able to be seen again thereafter has been unsuccessful in doing so reportedly due to COVID-19 outbreaks at the facility.

### A.  18 U.S.C. § 3553(a)(1): Nature, Circumstances, and History of the Defendant

George John Bratsenis was born on January 10, 1949, in Stamford, Connecticut, to the marital union of John George Bratsenis and Irene Bratsenis (nee Solare). Mr. Bratsenis' mother passed away at 52 years old in 1977, after suffering from breast cancer for several years, which left an indelible mark on Mr. Bratsenis who was a young man at that time. Mr. Bratsenis' father

---

[2] In fact, just one month ago, a federal facility, FCI Danbury, was recognized in national news for denying both Senators Blumenthal and Murphy meaningful access to review the living conditions at that facility. https://abcnews.go.com/amp/US/wireStory/senators-denied-full-access-federal-prison-82491231

passed away in 2001 at 79 years old. Mr. Bratsenis has five (5) sisters, Mary Bratsenis, Linda Bratsenis, Patty Sileom, Kathy Murphy, and Barbara Bratsenis. He is closest to his sister Kathy Murphy who lives in Connecticut with her husband and has five (5) daughters, two (2) of whom still live at home.

Mr. Bratsenis grew up and spent his whole childhood living in Stamford, CT.  He would walk to the park and play Little League baseball.  However, at the age of fifteen he started drinking alcohol, and from there began experimenting with drugs throughout the 1960s, such as valium, LSD, heroin, and cocaine. At the age of seventeen, after graduating high school in 1967, Mr. Bratsenis ran away to South Carolina and got married to Paula Hawkins. In 1969, he subsequently got divorced for the first time. Mr. Bratsenis had enlisted in the United States Marines on April 2, 1968, completed his basic training in South Carolina, and remained in the Marines until his honorable discharge in April of 1974. He vividly describes, among other things, being almost buried alive and nearly dying during the time of his training to be a "tunnel rat" during the Vietnam War era.

Before his discharge, on December 6, 1970, Mr. Bratsenis married Patricia Depirto. While they separated in 1984, the two were married through 1995 and during their marriage had two (2) children together, Melanie Bratsenis, approximately 50, of Vera Beach, Florida, and Shawn Bratsenis, approximately 40, also of Florida. Mr. Bratsenis also adopted Ms. Depirto's daughter born of an earlier relationship, Dodie, approximately 52, also of Vera Beach. Mr. Bratsenis later had another son, George Bratsenis Jr., born in 1980, with Iris Germano, who passed away in 1985.

Mr. Bratsenis was first incarcerated in 1983 and remained so until 2010. While incarcerated, Mr. Bratsenis worked athletic detail, worked in food service as a morning shift cook, helped

expand the facility library program at Lewisburg Penitentiary after the book donations he solicited from local colleges necessitated an expanded library, reorganized the entire library, maintained the sanitation of the library area in an outstanding manner, and earning three separate cash rewards.

Mr. Bratsenis was arrested in the instant matter in 2014 and has been incarcerated ever since. Since then, as he has continued to age, he has unfortunately encountered a variety of health issues which have inexorably altered the course of his life. Those issues are more fully set forth in an addendum filed under seal.  It is true that Mr. Bratsenis has had difficulty obtaining treatment while in jail. In fact, in the aforementioned article detailing the conditions in MCC, David Patton, the attorney in chief at Federal Defenders of New York stated, "Chronic shortages of medical staff mean that people suffer for long periods of time when they have urgent medical issues." Benjamin Weiser, N.Y. Times (2021).

Since Mr. Bratsenis's transfer to MDC in late August 2021, nearly six (6) months ago, he has acclimated to the facility, and been moved to a smaller dormitory with those who are closer to him in age and health. Additionally, despite his illnesses, and not feeling his best, he has gotten a job at the facility, and has been occupying his other free time with reading.

### B.  18 U.S.C. § 3553(a)(2): Need for Sentence Imposed to Provide Just Punishment.

Section 3553(a)(2)(A) requires judges to consider "the need for the sentence imposed…to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." It is certainly appropriate that this Court properly weigh the seriousness of Mr. Bratsenis' actions in this incident with his advanced age, active cancer diagnosis, the fact that he has already been incarcerated for about seven and a half years, his

honorable discharge from the United States Marines after serving in the Vietnam War, and the fact that he has spent the entirety of the COVID-19 pandemic incarcerated in MCC and MDC in New York City, New York, a hot spot which caused the illness of a great many inmates. Not only has this environment been more punitive than had thought imaginable, it has also not been conducive to ensuring Mr. Bratsenis has his chosen treatment option for his cancer.

As previously mentioned, Mr. Bratsenis has been incarcerated originally since 2014. During the pandemic, for almost two years, he was not even able to step out into the courtyard which has been shut down, fearing exposure especially due to his compromised immune system. In this time, Mr. Bratsenis has reflected on his life and past actions. Mr. Bratsenis wishes to obtain treatment that is only available to him in the community. He would like to be able to not die while in prison.

It is important to note that Mr. Bratsenis in no way minimizes the seriousness of this offense and takes full responsibility for his poor choices.  In fact, he recognizes the very serious nature of his conduct in the instant matter, and he understands that he must be held accountable by this Court. This is evident in the timeliness of Mr. Bratsenis' plea of guilty, explicit acceptance of responsibility, and lengthy term of incarceration that he has served thus far with his not accruing any substantial disciplinary action while at MCC, or more recently, MDC.

As to specific deterrence and the need for the public to be protected from this Defendant, forgetting about the severe consequences that this matter has brought him, including having been incarcerated for the last seven plus years, his age and illnesses have both advanced substantially during that time.  He now has cancer. He has COPD.  He is unable to walk very far at all without the need for an inhaler.  It would seem most unlikely that he poses a danger to anyone at this juncture in his life.

Speaking to general deterrence, this Court's sentence should be sufficient to send a message that involvement in illegal activity will carry consequences, especially since Mr. Bratsenis has been detained for years most recently throughout the COVID-19 pandemic, and while having cancer which has remained largely untreated, making his life that much harder, still.  It is fantastical to think a member of the public would be likely to commit this crime based on the results of Mr. Bratsenis' matter.

## IV.     SHOULD THE COURT IMPOSE A GUIDELINE SENTENCE, IT SHOULD DOWNWARDLY DEPART

In the event the Court decides to impose a sentence pursuant to the *USSG*, he asks this Court consider a downward departure pursuant to USSG §§ 5H1.1 (Age), 5H1.3 (Mental Health), 5H1.4 (Physical Condition), and 5H1.11 (Military, Civic, Charitable, or Public Service). In addition, pursuant to *§5K2.0(c),* Mr. Bratsenis submits that the combination of factors which together here exist are substantial grounds for a departure as relates to Mr. Bratsenis, to wit:

A.   His active cancer diagnosis which is more fully set forth in an addendum filed under seal;

B.   His advanced age of 73 years old;

C.   His additional health problems which are more fully set forth in an addendum filed under seal;

D.   His already having served more than seven and a half years in prison since September 2014 with an advisory Guideline range of 100-125 month;

E.   His incarceration during the pandemic; and

F.   His military service in the Vietnam War, and subsequent honorable discharge.

As relates to Mr. Bratsenis' six (6) years of service in the United States Marines during the Vietnam War and Honorable Discharge, as described in the PSR, Mr. Bratsenis was buried

during a training exercise, most likely with him being trained as a "tunnel rat," one of the most dangerous assignments one can think of in wartime. It appears likely therefore that Mr. Bratsenis suffers from undiagnosed Post Traumatic Stress Disorder (PTSD), which could be considered, in combination with the above circumstances, also warranting a departure under §5H1.3.

While perhaps any one of these factors above considered individually might not be sufficient to provide a basis for departure, taken together, they have posed an avalanche of difficulty for this Defendant and provide ample grounds for this Court to depart.  As the Court once aptly stated, "Mr. Bratsenis has already served more than 6.5 years in prison since September 2014, that his Sentencing Guidelines range is 100-125 months, and that a 71-year old defendant with an active cancer diagnosis would ordinarily have strong grounds to seek a downward departure." It is upon this very statement the Defendant relies in seeking a sentence of time served. Mr. Bratsenis is old. He is sick. He knows the mistakes that he has made in his life and has paid for them. Mr. Bratsenis regrets his poor choices, and plans to apologize to his victims at sentencing. There is little else that he can do.

At the time of sentencing, Mr. Bratsenis will have been in pretrial detention for almost ninety (90) months. A sentence of 100 months' imprisonment, at the bottom of the guideline range, would require Mr. Bratsenis to serve 87 months, with credit for good time. With the approximately 90 months he has served, he would be immediately eligible for home detention in light of his medical condition. When considering Mr. Bratsenis' age and medical condition, the time he has already served on this offense could certainly constitute the majority of the remainder of his life. Mr. Bratsenis accordingly asks that this sentence not be one which causes him to die in prison. In light of the foregoing, only a sentence of time served, with supervised release appears to be fair, just and reasonable and accomplishes the purposes of sentencing.

V.      **CONCLUSION**

Due to the history and characteristics of Mr. Bratsenis, and the unique facts and circumstances of his case, in that he is 73 years old, is in very poor health including an active cancer diagnosis, has been incarcerated for seven- and one-half years, as well as his incarceration during the COVID-19 pandemic, the appropriate sentence which will provide just punishment is time served, with supervised release.  To the extent that this Court is inclined to sentence Mr. Bratsenis to a term of extended incarceration, we ask that this Court order that he be designated to either FMC Devens or FMC Butner so he may receive appropriate care for his illnesses as set forth herein.

Respectfully submitted,
THE DEFENDANT,
GEORGE BRATSENIS

BY:

/s/ Charles L. Kurmay
Charles L. Kurmay, CT # 20180
61 Cherry Street
Milford, CT 06460
Tel. (203) 380-1743
Fax (203) 380-0293
E-mail: ckurmay@snet.net

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 23, 2022 a copy of the foregoing was filed electronically and served on anyone able to accept electronic filing. Notice of this filing will be sent by email to all parties by operation of the court's electronic filing system as indicated on the Notice of electronic filing or by mail to anyone unable to accept electronic filing. Parties may access this filing through the Court's CM/ECF filing system.

<u>/s/      Charles L. Kurmay</u>